**VLADECK, RASKIN & CLARK, P.C.**

JEREMIAH IADEVAIA
(212) 403-7323
EMAIL: jiadevaia@vladeck.com

September 12, 2024

**BY ECF**
The Honorable Gary Stein, U.S.M.J.

     Re: <u>Matthew Felder v. Warner Bros. Discovery, Inc., 23-Civ-8487 (AT) (GS)</u>

Dear Judge Stein:

  We represent Matthew Felder in this case against his former employer Warner Bros. Discovery, Inc. ("WBD").[1] We write pursuant to Your Honor's Individual Rules to request respectfully that WBD be compelled to produce documents concerning Felder's performance, comparator evidence, and policies.[2] The parties have exchanged letters and emails[3] and met and conferred on several occasions via Zoom, including on May 14, August 6, and on August 28 for more than 1.5 hours but have been unable to resolve these disputes.[4]

  Felder worked for WBD for over 18 years. In August 2022, Felder complained about an incident in which a WBD employee, "M.S.," sexually harassed a client representative at an offsite company event (the "Event"). Felder was the only WBD employee to report and try to stop the harassment. Despite cooperating with the investigation, about two weeks after his protected complaint, WBD fired Felder for Cause, and refused to pay severance. WBD, which has shifted its justification, asserts that it fired Felder because he: organized and planned the Event at which attendees became intoxicated; failed to remove M.S. from the Event; failed to monitor M.S. during the Event; and failed to promptly report the policy violation to WBD. In contrast, WBD did not fire other employees who planned the Event and/or attended it even though some were more senior than Felder; no one else reported M.S.'s misconduct; and no one attempted to stop the misconduct.

  I. Legal Standards

  Under Fed. R. Civ. P. 26, parties may obtain discovery regarding any non-privileged matter that is 1) relevant and 2) proportional to the needs of the case.[5] Relevance "is an extremely broad concept" which "has been construed . . . to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."[6] "[P]roportionality focuses on the 'marginal utility of the discovery sought' and requires a balancing of the multiple factors set forth in [Rule] 26(b)(1)." <u>ValveTech</u>, 2021 WL 630910, at *2. "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the

---

[1] Felder alleges that WBD retaliated against him in violation of Title VII of the Civil Rights Act of 1964; the New York State Human Rights Law; and the Administrative Code of the City of New York.

[2] Felder intends to submit a letter motion to compel WBD to produce documents concerning its investigation related to his firing. Felder reserves all rights to compel further production as there are some issues in which the parties continue to seek resolution without Court intervention.

[3] Regarding ESI terms, Felder sent his proposed search terms on April 3; WBD responded on June 4; Felder replied on June 24; and WBD sent its next reply on August 13. The parties exchanged letters concerning the other discovery issues on the following dates: Felder sent his deficiency on July 1 and WBD responded on August 13.

[4] Following the most recent meet and confer, Felder sent an email summarizing the outstanding issues on September 2. WBD responded on September 5. A copy of the email exchange is attached hereto as Exhibit A.

[5] <u>ValveTech, Inc. v. Aerojet Rocketdyne, Inc.</u>, 2021 WL 630910, at *2 (W.D.N.Y. Feb. 18, 2021).

[6] <u>Feltenstein v. City of New Rochelle</u>, 2018 WL 3752874, at *3 (S.D.N.Y. Aug. 8, 2018).

The Honorable Gary Stein
September 12, 2024
Page 2

information in issue, the less likely its discovery will be found to be disproportionate." Id.

II.  Comparator Information

There can be no doubt that comparator evidence is relevant to Felder's retaliation claims. Felder can show retaliation by comparing WBD's treatment of him to that of similarly situated employees within and outside of his protected class, including those who made protected complaints and those who engaged in similar misconduct.[7] WBD has so far produced almost no comparator information. WBD should be compelled to produce the requested information.[8]

1) Ryan Spicer: Spicer was an Ad Sales VP who also attended the Event. WBD did not punish Spicer even though he was senior to Felder and made no effort to prevent the harassment. Indeed, WBD paid Spicer a generous separation package after the Event. Felder seeks his personnel file (excluding medical records) and his separation benefits.[9]

2) Jon Steinlauf: Chief U.S. Ad Sales Manager Steinlauf was involved in a 2009 incident where Steinlauf witnessed an intoxicated Account Executive throw a punch at another employee. Steinlauf failed to report the incident promptly and WBD did not discipline Steinlauf or the Account executive. Felder seeks his personnel file (excluding medical records). Indeed, WBD has promoted him numerous times since then.

3) Similar Misconduct: Felder seeks documents concerning other individuals accused of engaging in conduct similar to that at issue here.[10] See Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 474 (S.D.N.Y. 2011) (causation can be established through evidence of "disparate treatment of fellow employees who engaged in similar conduct").

4) Others Fired for Cause: Felder seeks documents concerning VPs, SVPs, and EVPs who were fired for Cause between August 1, 2020 and August 31, 2024, including, but not limited to, HR documents or documents in the employee's personnel file related to the alleged misconduct, WBD's response to the misconduct, and the reason for WBD's actions.

5) Other Complaints: Complaints and/or lawsuits alleging retaliation or sexual harassment against any VP, SVP, and EVP from August 1, 2020 to August 31, 2024, which, includes, but is not limited to, HR documents or documents in personnel files related to alleged misconduct, WBD's response, and reasons why any disciplinary action was taken. See id.

6) Job descriptions: For showing that individuals were comparators, Felder seeks job

---

[7] See King v. Aramark Servs., Inc., 96 F4th 546, 563 (2d Cir. 2024) (differential treatment of those outside plaintiff's protected class is a "recognized method" of raising an inference of bias).

[8] Contrary to WBD's contention, employees outside Ad Sales are appropriate comparators as they were subject to the same conduct and performance standards. See Metcalf v. Yale Univ., 2017 WL 627423, at *4 (D. Conn. Feb. 15, 2017) (coworkers were comparators even though they worked in different area and had different supervisors). WBD asserts that its HR head, who had responsibilities for the entire organization, made the decision to fire Felder. Other individuals who the head of HR evaluated and who could be fired by HR are thus appropriate comparators.

[9] WBD has agreed to search for documents reflecting Spicer's length of service working for WBD.

[10] Specifically, Felder seeks documents concerning any VPs, SVPs, and EVPs who purportedly engaged in any of the following misconduct between August 1, 2020 and August 31, 2024: organizing/planning an off-site event at which attendees became intoxicated; failing to remove another employee from a WBD event; failing to monitor another employee at a WBD event; or failing to promptly report a violation of WBD's policies.

The Honorable Gary Stein
September 12, 2024
Page 3

descriptions for: Ad Sales VP Spicer, SVP Michele Kornet, VP Stan Soong, VP Jeff Pellegrini, SVP Jonathan LaConti, SVP Robert Latorre, EVP Greg Regis, EVP Karen Grinthal, and EVP Scott Kohn. They were involved in the planning and approving of the Event and supervised individuals who attended those Events. Felder has narrowed this request so that he is not asking for complete personnel files for these individuals.

III.  <u>WBD Policies in Effect Between August 2022 and August 2024 and Related Materials</u>

- For August 2022 to August 2024, Felder seeks policies applicable to him, changes to those policies, trainings given concerning those changes, and the reasons for the changes. WBD has refused to produce for 2023 and 2024 updates to applicable policies and WBD trainings provided in connection therewith. Such policies and training materials should be produced because WBD asserts it fired Felder for violating the policies. Felder contends that the explanation is pretext because at least some of the policies were not violated and WBD made changes to some policies and held trainings about them because they were vague. (Complaint ¶¶ 111-12) There is no reason to limit discovery to 2022. (<u>Infra</u> (V))

- WBD also has refused to produce documents concerning the reasons for updating policies and trainings for the policies for 2022 to 2024. The reasons for the updates and trainings are relevant to show pretext. Also, WBD's blanket assertion of privilege is improper.

IV.  <u>Felder's Performance for the Period August 1, 2020 until His Firing in August 2022</u>

- Felder seeks documents concerning his performance for August 1, 2020 until his firing in August 2022. There are no performance reviews produced for this period and WBD refused to run electronic searches for such information. Felder has narrowed his request. Felder, who was a VP, Ad Sales, had individual and team sales goals and his compensation was tied to achievement of certain metrics. While WBD contends that documents concerning Felder's performance are not relevant because there is no dispute that he was good at his job, Felder is entitled to these materials. Felder will argue that the decision to fire a high performing, long term employee with no prior disciplinary history purportedly for a single incident is evidence of pretext. While WBD has offered to stipulate that Felder was a strong performer, such a stipulation is inadequate. Felder should be permitted to show the jury evidence that substantiates this assertion.

- WBD has produced a document to reflect base salary and bonuses that Felder received in 2021 and 2022, but nothing for 2020. WBD has produced the 2021 offer letter following Felder's promotion in 2021 that specifies his target compensation. However, WBD has not produced bonus or commissions plans, sales targets, whether those targets were met, nor documents reflecting how Felder's incentive compensation was determined.

V.  <u>Electronic Searches</u>

WBD should be compelled to run electronic searches that seek plainly relevant information concerning this matter. For the most part, WBD unilaterally ran searches without consulting with Felder or providing hit counts to show burden despite Felder's compromise efforts. Attached as Exhibit B are Felder's proposed searches and highlighted are the disputed issues.

1) Time Frame: For searches 2, 4, 5, 11, & 12, WBD has refused to run searches outside of a narrow time frame. Courts regularly find a reasonable period extending several years

The Honorable Gary Stein
September 12, 2024
Page 4

    before and after the adverse actions. Felder has limited his searches to two years before and after his firing (and in some instances, where indicated, to a shorter period).[11]

2) Custodians: For searches 2 & 3, WBD has refused to search the following custodians: Stan Soong, Jeff Pellegrini, Jonathan LaConti, Robert Latorre, Karen Grinthal, and Scott Kohn. WBD should be required to search those custodians' emails because they were involved in planning and approving the Event. WBD has specifically cited Felder's role in planning and approving the Event as a reason for firing him.

3) Burden: WBD objected to Felder's proposed searches 5 & 8 on burden grounds. Felder offered to meet and confer, but WBD refused to provide even basic information to support its burden objection such as hit reports. WBD should be compelled to run the searches as Felder proposed or provide data to substantiate burden concerns.[12]

4) Search Terms: For search 11, which seeks documents related to WBD's polices and changes to those policies, WBD has refused to include the terms "update" and "change." WBD asserts that these searches are not relevant (supra (III)) and that the searches are burdensome without providing basic information such as hit reports.

5) Other specific searches in which WBD completely refused to run the search:

- Search 1 – Seeks documents where Felder is mentioned by name, during the key period between late June 2022 and August 18, 2023, and involving the key actors, including Felder's supervisors Michelle Kornett and Greg Regis; the HR personnel involved in the Event investigation and Felder's firing, including Adria Alpert-Romm, Anna Wingert, Kit Herrera; and Felder's long-time mentor and head of Ad Sales Steinlauf. The search specifically excludes communications in which Felder is copied.

- Search 7 – Seeks documents concerning Felder and purported violations of the key policies at issue in this matter for August 1, 2020 to August 18, 2023.

- Searches 9 & 10 – Seeks comparator information in which the key decisionmakers consider firing other employees and deal with conduct similar to that at issue here. Felder has offered to narrow these searches, but WBD refuses to provide hit reports and to identify in response to interrogatories others alleged to have engaged in similar misconduct.

We thank the Court for its attention to this matter.[13]

                            Respectfully submitted,

                            *s/ Jeremiah Iadevaia*

---

[11] See Chan v. NYU Downtown Hosp., 2004 WL 1886009, at *6 (S.D.N.Y. Aug. 23, 2004) (approving request two years before plaintiff's employment to present); Bujnicki v. Am. Paving & Excavating, Inc., 2004 WL 1071736, at *3, *7 (W.D.N.Y. Feb. 25, 2004) (ordering comparator personnel records for two years before and after bias claims).

[12] Courts have ordered parties to produce hit counts under similar circumstances. See In re Allergan PLC Sec. Litig., 2020 WL 4034751, at *1 (S.D.N.Y. Mar. 30, 2020) ("As part of the negotiation process over search terms, the defendants must provide . . . hit counts for searches run with proposed terms.").

[13] Felder respectfully requests permission to further brief relevance and proportionality considerations, or to address them during a conference with the Court.